**ALANA L. MCMAINS**
California State Bar No. 285942
**MCMAINS LAW, APC**
402 W. Broadway Ste. 400
San Diego, California 92101-5030
Telephone: (619) 615-4229
alana@mcmainslaw.com

Attorneys for Defendant
FARLIS ALMONTE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BENJAMIN J. CHEEKS)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FARLIS ALMONTE (1),<br><br>Defendant. | Case No. 25-MJ-1411-BLM-BJC<br><br>**MR. ALMONTE'S BRIEF IN OPPOSITION TO GOVERNMENT'S APPEAL OF THE MAGISTRATE JUDGE'S DENIAL OF GOVERNMENT'S MOTION TO DETAIN** |

## SUMMARY OF ARGUMENT

Just as it did during the original detention hearing in this case, the United States in its appeal focuses almost exclusively on the weight of the evidence against Mr. Almonte. Despite the fact that the weight of the evidence is the least important factor, the United States pays scant attention to any of the other § 3142(g) factors in this case. Regardless of what the United States may wish, there is no presumption of detention in this case. The Magistrate Judge thus fairly and properly determined, upon a serious weighing of the factors, that conditions could be set in this case that would ensure Mr. Almonte's appearance. *De novo* review of the record shows that to hold otherwise would violate the clear tenets of the Bail Reform Act. Therefore, this Court should affirm the decision of the Magistrate Court.

**RELEVANT PROCEDURAL HISTORY**

On Tuesday, May 25, 2025, Farlis Almonte and another Customs and Border Protection Agent were arrested on a sealed complaint charging them with alien smuggling and accepting bribes as public officers. (ECF No. 1). At Mr. Almonte's initial appearance, the United States moved to detain him without bail based on flight risk. (ECF No. 7).

The detention hearing was held before Magistrate Judge Barbara Lynn Major on Friday, May 28, 2025. (ECF No. 21). Pretrial Services had recommended a bond of $5,000 to be secured by the signature of one financially responsible adult. (ECF No. 30). In its oral argument, the United States largely provided a recitation of the facts of the complaint, leading the Magistrate Judge to urge the Government to address factors beyond the weight of the evidence.[1] The United States then presented the arguments outlined in its appeal. (*See* ECF No. 26).

The defense urged that detention was not appropriate and requested a bond of $20,000 secured by one financially responsible adult and a $4,000 cash deposit. It noted that Mr. Almonte's wife, a proposed surety, was present in court. Defense counsel provided further argument that will be addressed in this brief.

The Court then provided an explanation for its decision to deny the Government's motion to detain. It set a bond in the amount of $40,000, to be secured by the signatures of two financially responsible and related adults, with a $6,000 deposit. Its order specified that Mr. Almonte was required to live with a surety or family member, and thus allowed travel to Florida as all possible sureties and family members live in that state.

The Magistrate Judge granted the Government's request to hold the

---

[1] While the transcript of the hearing is being prepared for this Court's review, it is not yet available for defense counsel, and thus citation cannot be provided at this time. Defense counsel presents her good faith recollection of the matters that occurred at the hearing.

detention order until Monday evening in order to give the United States an opportunity to appeal. At approximately 4:00 p.m. on the date of the detention hearing, defense counsel provided the United States with a proposed bond packet with two sureties: Mr. Almonte's wife and his brother. On Monday, March 31, 2025, the United States filed its appeal. This opposition follows.

## ARGUMENT

This Court should affirm the Magistrate Court's decision because it correctly analyzed the § 3142(g) factors and determined the United States did not meet its burden of showing a serious risk of flight. As the Supreme Court held in *United States v. Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. 739, 755 (1987). This presumption of release is encapsulated in the Bail Reform Act ("BRA"). *See* 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, *id.* § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "reasonably assure" the defendant's appearance in court and the safety of the community. *Id.* § 3142(c)(1) (emphasis added).

### I. The Magistrate Court Properly Weighed the Factors Under § 3142(g)

The BRA required that bond be set in this case despite the Government's heavy emphasis on the weight of the evidence. The Magistrate Court followed the law properly when it put the least emphasis on those alleged facts, and instead gave stronger weight to the other relevant factors.

#### A. The Nature & Circumstances of the Offense and Weight of the Evidence

The charges against Mr. Almonte are undoubtedly quite serious. But it is important to recognize that, despite the gravity of the charges against him, those charges do *not* impose a presumption of detention under the BRA. This exclusion

was not inadvertent, because certainly if Congress intended all individuals charged with alien smuggling or public bribery to be detained pending trial, "it knew how to say so." *See Williamson v. CIR*, 974 F.2d 1525, 1530–31 (9th Cir. 1992). Thus, the intentional exclusion indicates that the legislature believed as a general matter that Mr. Almonte's alleged crimes are the type for which detention must be used more sparingly. It should also be noted that these are nonviolent crimes, and there have been no allegations that Mr. Almonte poses any danger to the community. In fact, based on the nature of the crimes, Mr. Almonte is not even in a position to return to that alleged criminal activity while on bond given that he is no longer working as a Customs and Border Protection Officer ("CBPO").

The United States has clearly emphasized that it views the weight of its evidence against Mr. Almonte as strong. The Ninth Circuit has repeatedly held, however, that this is the least important factor to be considered by a court in determining bail. *United States v. Winsor*, 785F.2d 755, 757 (9th Cir. 1986) ("Section 3142 neither requires nor permits a pretrial determination that the person is guilty; the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community.") (citing *Motamedi*, 767 F.2d at 1404).

### B.     Mr. Almonte's History and Characteristics

Section 3142(g)(3) lists a number of factors regarding the history and characteristics of a person to be considered in making the release determination. These factors also weigh in favor of release.

Mr. Almonte has no prior history of any criminal activity. His family believe strongly, even with the new allegations by the United States, that he is of good character and would not flee. He has been a member of the Church of God International Ministry of Jesus Christ for approximately 13 years; he has attended their services both back home in Florida and more recently in Chula Vista, California.

1    While the Government presents it as if Mr. Almonte immediately began committing crimes upon working for the United States, that misrepresents Mr. Almonte's long stable job history. After graduating from high school and taking some college courses, he worked in private security for many years. He then was hired by the Department of Homeland Security ("DHS") as Federal Protective Services Officer in 2015. He worked there for many years before accepting a job as a CBPO initially in approximately 2019. Mr. Almonte worked as a CBPO in Minnesota and Arizona, but wanted to return home to his family so he resigned and returned to his prior DHS job. He then reapplied to become a CBPO and was stationed in San Diego in March of 2023. Prior to these charges, he never had any disciplinary issues during any of his time working for the federal government.

Mr. Almonte also has extremely strong ties to the United States, such that abandoning his home country and starting a new life away from his family is simply unthinkable. He was born in New York and lived there much of his youth before eventually moving to Florida. He has a very tight relationship with his mother as well as his brother Arnolis, who is a proposed surety in this case. Mr. Almontes has two children that live in New York and he supports them financially. His youngest child, though, is a ten-year-old boy who lives in Florida with his mother Osmary Almonte. Ms. Almonte is technically still married to Mr. Almonte, though they have been informally separated for over a year as the distance grew difficult for them. But Mr. Almonte still financially contributes to his son and keeps in contact with him. And after more than a decade together, he has maintained a strong relationship with Osmary such that she is the other surety in this case. Mr. Almonte's father also lives in Florida, though they are less close.

Mr. Almonte's family are not substantially wealthy, but rather hard workers who are solidly middle class. His mother works as a hairdresser. His brother is a supply chain manager for a hospital and earns approximately $70,000 per year and his wife is a physical therapist who makes about the same income. Given that, a

5

substantially higher bond would have been impossible for the family. Mr. Almonte knows that if he were flee, this would be financially crippling to two of the people he has been closest to in his life. This provides substantial incentive to appear.

Although Mr. Almonte does not have any serious physical health issues, his mental health has been substantially affected by this arrest. Because of his job, Mr. Almonte has been required to be in protective custody. This means he faces more physical restraints, has more isolation, and has fewer privileges than the typical detainee. In many ways, he is being treated in custody as if he were a hardened violent criminal, despite this being his first time incarcerated with no allegations of prior violence. Thus, the time he spends in pretrial detention will be substantially more difficult for him than for the average detainee. Solitary confinement and other deprivations of social contact are especially known to cause severe psychological damage, and thus Mr. Almonte is at a high risk for deterioration of his mental health if he is continued in pretrial confinement.

Finally, Mr. Almonte has had no arrests or convictions. If convicted, he will be a zero-point offender, which is statistically the group least likely to recidivate. Due to his lack of prior criminal history, he has no failures to appear on his record and he was not subject to any type of supervision at the time of his arrest in this case. He has no history of abusing alcohol or drugs.

## II. Mr. Almonte Is Not a Serious Flight Risk and the Conditions Set by the Magistrate Court Are Sufficient to Assure His Appearance at Future Proceedings.

"[F]ederal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (reversing district court's order of detention based on flight risk of an Iranian citizen, who maintained large foreign bank accounts to which the Iranian government made the majority of deposits, was charged with exporting military items without a license, and had been warned by U.S. Customs

and the FBI that his activities were illegal). The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[2] The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here. The Ninth Circuit, along with many other courts throughout the country, has made clear that defendants are "serious" flight risks only in rare cases. *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *see also United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a *heightened* likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

Even including the additional information provided by the United States in its supplemental briefing, the Government has not met its substantial burden of proving a serious risk of flight. Although the United States declares in its brief that it has been proven "right" about Mr. Almonte, this Court cannot make a finding of a serious risk of flight based on allegations that, at this time, are largely speculative.

First, the government bears the burden of presenting some evidence to substantiate its allegation that a defendant is a serious risk of flight, but here the government has provided insufficient evidence. Second, to establish "serious risk" of flight, the government must demonstrate that the defendant presents an "extreme and unusual" risk of willfully fleeing the jurisdiction if released, but the government

---

[2] *See Bail Reform Act of 1983: Rep. of the Comm. On the Judiciary*, 98th Cong. 48 (1983). *See also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case, the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

7

has not met that burden here.[3] *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978).

There are a number of assumptions that the Government relies upon in making its assertions. It assumes that Mr. Almonte had any knowledge of his girlfriend Sara bringing money across the border; it assumes that Mr. Almonte was the true owner of this money; it assumes that Mr. Almonte earned this money through unlawful means; it assumes that Sara was planning to give the money to Mr. Almonte; it assumes that Mr. Almonte intended to use this money to abscond from his criminal charges. But none of this has been proven beyond even a preponderance of the evidence, let alone beyond a reasonable doubt. There are many unanswered questions–for example, who was this other man who crossed the border with Sara? If the Government believes that Sara is somehow involved in a greater conspiracy, it could just as easily be assumed that this other man was involved, and then against just as easily be assumed that the money could have been his.

Thus, these new "facts" are essentially just more criminal allegations against Mr. Almonte, and as such again must be given the least amount of weight when assessing the bail factors. In fact, given that they have not yet actually been charged against Mr. Almonte, they should be given even *less* weight than those allegations in the Complaint. Mr. Almonte remains innocent until proven guilty, both of the allegations in the Complaint and of these new additional allegations presented by

---

[3] *See* Bail Reform Act of 1983: Rep. of the Comm. On the Judiciary, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases . . . . . [T]hose involving . . . a serious risk that the defendant will flee . . . reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases." As representative of the "current case law," the committee cited *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) (holding that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention").

8

the Government hastily in its supplemental filing.

Even assuming that the money was proceeds of a criminal conspiracy, this *still* does not form sufficient basis to find a serious risk of flight given all the other § 3142(g) factors. Mr. Almonte is not a Mexican national with no reason to return to the U.S. and incentives to run back to his home country. Nor is he a solitary man with no social or familial ties or responsibilities to others that would remove his reasons to stay here. Instead, Mr. Almonte is a native-born U.S. citizen who is financially responsible for three children and a spouse. He is a family man who is extremely close with his family and would never put them at risk by absconding.

According to AO statistics, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond.[4] Statistics in this district demonstrate that only 2.5% of defendants abscond. Here, there simply is no basis to believe that Mr. Almonte is among the riskiest 2.5% of defendants in our district. For example, nothing in the Complaint suggests that Mr. Almonte in any way attempted to evade or resist law enforcement during his arrest.

The severity of his potential punishment cannot alone serve as a basis to find a serious risk of flight. There is nothing that suggests that Congress wanted all prisoners facing substantial prison time to be detained without bail; otherwise, the presumption of detention would apply based on Guidelines ranges and not the type of offense. Further, potential sentences are highly speculative; someone subject to a mandatory 10-year minimum may receive six months custody and someone who appeared to be facing a 0-6 range may end up serving many years. In this case alone, the United States has indicated that it is not yet sure about how much it thinks Mr. Almonte received for each unlawful act; that amount will make a large difference in the Guidelines. Thus, this Court should not place too much weight on this

---

[4]

argument by the Government.

## CONCLUSION

Mr. Almonte, though facing serious criminal charges, has far more reasons to stay than he does to leave. The Magistrate Court's determination took into account the severity of charges, the weight of the evidence, and the possibility of hidden funds. Despite all that, it found that it could set conditions that would reasonably assure release. The Magistrate Court's decision to deny detention was a proper application of the Bail Reform Act, and as such, it should be affirmed.

Respectfully submitted,

Date: April 2, 2025

s/ *Alana Lee McMains*
**ALANA LEE MCMAINS**
Attorney for Mr. Almonte